**Charles LaDUKE, Individually, etc., Plaintiff,**

v.

**Leonel CASTILLO et al., Defendants.**

**No. C-77-356.**

United States District Court, E. D. Washington.

July 12, 1978.

Evergreen Legal Services, Fred A. Horning, Michael J. Fox, Gary Wiggs, Yakima, Wash., Stephen R. Sady, Sunnyside, Wash., for plaintiff.

James J. Gillespie, U. S. Atty., Spokane, Wash., Robert S. Linnell, Asst. U. S. Atty., Yakima, Wash., for defendants.

## MEMORANDUM AND ORDER

NEILL, Chief Judge.

Sub judice is defendants' Motion for Summary Judgment. Plaintiff challenges the alleged practices of the Immigration and Naturalization Service (INS) in the Yakima area. Specifically, plaintiff alleges a consistent pattern and practice of unlawful interrogation, harassment, and searches of the farmworkers' residences in the Yakima Valley.

Plaintiff's claim for relief is based on two separate incidents involving INS officers. In late August, 1977, plaintiff LaDuke lived in a tent in a farm labor camp. Early one morning while asleep in his tent, plaintiff was allegedly awakened when a flashlight was shined in his eyes through a window in his tent. Plaintiff claims that the entire interior of his tent was subjected to flashlight search through the tent window. Plaintiff alleges that the Border Patrol agent did not identify himself, and that the search by flashlight was conducted without his consent.

In September, 1977, plaintiff moved from his tent to a cabin. Plaintiff claims that one night in early September he was awakened by the rattling of the chain latch on his door, and that he saw a hand inside of his door. The hand allegedly passed through a crack in the door and was apparently attempting to unlatch the chain. An INS officer then opened the door wide enough to shine a flashlight in plaintiff's face. The entire cabin was also flashlight searched without plaintiff's permission.

The defendant denies plaintiff's allegation that INS officers "searched" farm labor housing. The defendant does admit that officers had conducted official visits to private premises, undertaken for the purpose of determining whether illegal aliens were present at or near the premises, and that search warrants had not been obtained in connection with these area control operations.

Defendant relies on *Cuevas-Ortega v. Immigration and Naturalization Service* (9th Cir., May 3, 1978) for the proposition that the activities engaged in by the INS do not constitute a search for the purposes of the Fourth Amendment. In *Cuevas-Ortega*, INS agents knocked on petitioner's door to ask whoever answered for information about home birth registrations. A woman answered the door and, after the investigators identified themselves, spoke with them over the threshold. The Court found that during the conversation and subsequently, the woman freely admitted that she, her husband and five of their children were illegal aliens. The Ninth Circuit held that this encounter did not involve the peti-

tioner's fourth amendment rights, as she was under no constraint to invite or allow the investigators into the apartment, and that there was no arrest, custody or curtailment of liberty.

The facts of the *Cuevas-Ortega* case differ substantially from those now before the court. Plaintiff alleges that he was awakened in the middle of the night by unidentified men, and that his home was flashlight searched without his consent. More importantly, plaintiff claims that in the September search an officer actually placed his hand inside of the door to his home. Unlike the facts in *Cuevas-Ortega*, no issue of consent is involved in either of the alleged searches.

Individuals enjoy a reasonable expectation of privacy in the confines of their home, and such privacy is protected by the fourth amendment from government intrusion. In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) the Supreme Court held that government agents are considered to have engaged in search activities when they intrude on an individual's privacy. As stated in *United States v. Kim*, 415 F.Supp. 1252 (D.Haw. 1976):

> There can be no question, . . . that the protection recognized by *Katz* includes protection against unreasonable visual intrusions. . . . Visual intrusions can interfere with an individual's right to be left alone just as powerfully as the eavesdropping at issue in *Katz*.

415 F.Supp. at 1254.

A warrantless search may be upheld under the "plain view" doctrine only where the officer had a prior justification for an intrusion, and the search was inadvertent. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There could be no "plain view" search of plaintiff's home, as it was allegedly too dark to view the inside of the premises without the aid of a flashlight. The facts, as alleged by the plaintiff, constitute a valid basis for a claim for relief under the fourth amendment. *See Illinois Migrant Council v. Pilliod*, 540 F.2d 1062 (7th Cir. 1976).

A motion for summary judgment lies only when there is no genuine issue of material fact. Clearly, summary judgment is inappropriate at this time as there are numerous factual disputes as to the conduct and action of the INS agents on the nights of the two searches.

As plaintiff's complaint does state a valid claim under the fourth amendment, and in light of the numerous factual disputes involved in this case, defendant's motion for summary judgment is hereby DENIED.

IT IS SO ORDERED.