**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Kenneth D. GOOCH, Defendant–Appellee.**

No. 92–35428.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1993.

Decided Oct. 6, 1993.

Timothy J. Ohms, Asst. U.S. Atty., Spokane, WA, for plaintiff-appellant.

Daniel J. Keane and Brian L. Meck, Keane & Rasmussen, Spokane, WA, for defendant-appellee.

Before: WRIGHT, ALARCÓN, and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

The United States appeals the district court's judgment of acquittal and the subsequent order of dismissal with prejudice of defendant Kenneth D. Gooch's conviction for

being a felon in possession of a firearm. The government contends that a warrantless arrest of Gooch and a warrantless search of Gooch's tent did not violate the Fourth Amendment. We affirm.

## I

At about 3:50 a.m., a woman called the Stevens County Sheriff's office on behalf of Marc Cole, who claimed a man had shot at him at the state campground. Two officers responded. As they neared the campsite, they observed a vehicle leaving the campsite. The occupants told the officers that Gooch was "hurting people" at the campground and that shots had been fired. Closer to the campground, the officers encountered Marc Cole. Cole said Gooch had fired a shot in his direction after a fight in which Gooch tried to "stick [Cole's] head into the fire." These incidents occurred between midnight and 2:00 a.m.

The officers arrived at the entrance to the campground at approximately 5:00 a.m. and then waited some time for the arrival of another deputy and a reserve officer. It was daylight by this time. Three officers then headed down the entrance road to the campsite itself, a distance of approximately one mile. On the way, they encountered a young man, who told them Gooch was in his tent with a woman. The district court found that when the officers arrived at the campsite, they observed that the campsite was quiet and they determined that Gooch was asleep in his closed tent.[1] Gooch had been living in the tent for several days; he had no other residence.

The officers, without seeking an arrest warrant, ordered Gooch out of the tent, patted him down, and arrested him. He was handcuffed and locked in the patrol car 20 yards from the tent. The officers then ordered the other occupant of the tent, Mary Baker, out of the tent. The district court found that the officers then talked to other campers for about 15 minutes. The other campers were not obstructive or threatening,

nor was there any indication that they had been involved in the criminal activity.

Still lacking a warrant, the officers searched the tent for the firearm. One of them found a loaded handgun under Gooch's air mattress in the tent.

After dismissal of state charges, a federal indictment for being a felon in possession of a firearm was then returned. A jury convicted Gooch of the federal charge. Gooch timely moved for judgment of acquittal and for a new trial. Gooch also filed a § 2255 petition for habeas corpus in which he claimed ineffective assistance of counsel in that his counsel had failed to move to suppress the firearm. The district court held a post-trial suppression hearing and determined that the firearm, along with the holster and ammunition, should have been suppressed and that the warrantless arrest was invalid. The district court determined that Gooch had a reasonable expectation of privacy in the tent which was protected under the Fourth Amendment, that there were no "exigent circumstances," and that even if the arrest was lawful, the search was not a valid search incident to arrest.

## II

▆▆▆ The threshold issue is whether the Fourth Amendment protects a person's privacy interests in a tent located on a public campground. The lawfulness of a search or arrest is reviewed de novo. *United States v. Tarazon*, 989 F.2d 1045, 1048 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). The district court's factual findings are reviewed for clear error. *United States v. Echegoyen*, 799 F.2d 1271, 1277 (9th Cir.1986).

## III

▆▆▆ Gooch must have had both a subjective and an objectively reasonable expectation of privacy in the tent. *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967). The government contends that Gooch could not have had a subjective expectation of privacy in the tent

---

1. Although Gooch had either fallen asleep or passed out due to alcohol consumption, there is no evidence in the record that the officers knew that fact. This finding of the district court is clearly erroneous.

since he could have expected the police to respond to the disturbance he caused and to intrude on his privacy. According to this view, no lawbreaker would have a subjective expectation of privacy in any place because the expectation of arrest is always imminent. The court's finding that Gooch established a subjective expectation of privacy is not clearly erroneous.

We have already established that a person can have an objectively reasonable expectation of privacy in a tent on private property. *LaDuke v. Nelson*, 762 F.2d 1318, 1326 n. 11, 1332 n. 19 (9th Cir.1985). *Accord LaDuke v. Castillo*, 455 F.Supp. 209 (E.D.Wash.1978). This reasonable expectation is not destroyed when a person's tent is pitched instead on a public campground where one is legally permitted to camp. The Fourth Amendment "protects people, not places." *Katz*, 389 U.S. at 351, 88 S.Ct. at 511; *id.* at 351–52, 88 S.Ct. at 511 (What a citizen "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."); *United States v. Chadwick*, 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977). In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Court interpreted *Katz* to hold that "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Id.* at 143, 99 S.Ct. at 430; *id.* at 144 n. 12, 99 S.Ct. at 430 n. 12. ("Expectations of privacy protected by the Fourth Amendment ... need not be based on a common-law interest in real or personal property, or on the invasion of such an interest.").

The government would have us compare Gooch's case to those involving mobile motor homes, in which a person has a reduced expectation of privacy. *See California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (warrantless search of mobile home in which defendant resided did not violate Fourth Amendment because automobile exception applied). The fact that a tent may be moved, alone, is not enough to remove the Fourth Amendment protections. As noted above, tents are protected under the Fourth Amendment like a more permanent structure. Also, a tent is more analogous to a (large) movable container than to a vehicle; the Fourth Amendment protects expectations of privacy in movable, closed containers. *United States v. Ross*, 456 U.S. 798, 811, 102 S.Ct. 2157, 2165, 72 L.Ed.2d 572 (1982); *United States v. Chadwick*, 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977). *See also Pottinger v. City of Miami*, 810 F.Supp. 1551 (S.D.Fla.1992) (person has reasonable expectation of privacy in belongings and personal effects in public area); *State v. Mooney*, 218 Conn. 85, 588 A.2d 145 (same), *cert. denied,* —— U.S. ——, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991). Besides, the reduced expectation of privacy in a vehicle is due in large part to the fact that there is "pervasive" government regulation of vehicles. *Carney*, 471 U.S. at 392, 105 S.Ct. at 2069 ("These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways."); *South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). Finally, even the automobile exception applies only when a vehicle is on the open road or is capable of movement and is "in a place not regularly used for residential purposes—temporary or otherwise." *Carney*, 471 U.S. at 392, 105 S.Ct. at 2070. The district court did not err in concluding a tent is more like a house than a car. We hold that Gooch had a reasonable expectation of privacy such that the warrantless search of his tent violated the Fourth Amendment.

## IV

The district court held the police were required to obtain an arrest warrant, so the warrantless arrest was unconstitutional. No warrant is required to arrest a suspected felon in a public place. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Absent exigent circumstances, a warrantless arrest *is* unconstitutional in a "non-public" place, even when that

place is not one's residence.[2] *United States v. Alvarez,* 810 F.2d 879, 881 (9th Cir.1987); *Minnesota v. Olson,* 495 U.S. 91, 96 n. 5, 110 S.Ct. 1684, 1688 n. 5, 109 L.Ed.2d 85 (1990). *See United States v. Ruckman,* 806 F.2d 1471, 1475–76 (10th Cir.1986) (McKay, J., dissenting) (suggesting that inhabitant of cave on public property has an objectively reasonable expectation of privacy therein even if the cave is not considered a house).

We have not yet settled whether a tent is a "non-public" place for arrest warrant purposes. In *United States v. Rigsby,* 943 F.2d 631 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1269, 117 L.Ed.2d 496 (1992), the Sixth Circuit addressed whether an officer who pulled back the unzipped flap of an unoccupied tent and saw a shotgun inside was required to obtain a search warrant. The court concluded that no search warrant was necessary. In that case, "there was no indication that the tent was like a 'home' or even a temporary habitation." *Id.* at 636. The court explicitly reserved judgment on the defendant's privacy interest in the tent. *Id.* at 636–37 ("This is not to say that defendant had no privacy interest in the tent itself, but merely that the presence of the tent, in which no one was apparently residing, did not create a privacy interest in the otherwise non-private area surrounding it.").

The court in *People v. Livermore,* 9 Mich. App. 47, 155 N.W.2d 711, 714 (1967), addressed whether police could enter a tent in a public campground and arrest the occupants. The court analyzed the case as one involving a "dwelling house" but upheld the arrest because under Michigan law the officers were justified in making a warrantless arrest in a dwelling house. The court relied on a case involving police entry into a house to support its conclusion that the police entry was justified. *Id.*

The defendant in *Livermore* also raised the issue whether the tent was a "public" or "private" place, arguing that the information required proof that the crime occurred in a public place. The state trial court assumed "[f]or the purposes of argument" that the

tent was "the equivalent of a private residence notwithstanding its location in a public park," but, like the appellate court, decided the case on other grounds. *Id.* 155 N.W.2d at 715.

■ Though Gooch's tent was pitched on public property, we hold that the closed tent was a "non-public" place for purposes of Fourth Amendment analysis. We have recognized that, despite the special status afforded a residence under the Fourth Amendment, "an individual's privacy interests may be implicated in a variety of other settings." *United States v. Driver,* 776 F.2d 807, 809 (9th Cir.1985). By establishing a campground, the state created a situation where campers were invited to come to set up a tent. The campers could reasonably assert a legitimate, though temporary, interest in their privacy even in this short-term "dwelling." A guest in Yellowstone Lodge, a hotel on government park land, would have no less reasonable an expectation of privacy in his hotel room than a guest in a private hotel, and the same logic would extend to a campsite where the opportunity is extended to spend the night. *See Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964) (hotel guest has Fourth Amendment protections). *See also Eng Fung Jem v. United States,* 281 F.2d 803, 805 (9th Cir.1960) ("The transience of appellant's stay in the [hotel] room searched by the officers does not dilute the force of constitutional protection. The hotel room in question was appellant's dwelling. That he lived there for but several days is of no consequence.... The right to privacy must be accorded with equal vigor both to transient hotel guests and to occupants of private, permanent dwellings.").

■ For the first time on appeal, the government argues that Gooch's use of the campground was wrongful because state law prohibited using the campground primarily for residence purposes. We do not address that argument, as "[i]ssues not presented to the trial court cannot generally be raised for

---

**2.** As it happens, Gooch's tent *was* his residence. However, the police officers could not reasonably have been expected to realize that fact. This

opinion does not rely in any way on the fact that Gooch actually had no other residence.

the first time on appeal." *United States v. Flores–Payon,* 942 F.2d 556, 558 (9th Cir. 1991). Though we can review pure issues of law which were not raised before the district court, *id.,* it is not clear from the record, as a matter of law, that Gooch was wrongfully camping at the campground despite the fact that Gooch had no other legal residence. *See Ruckman,* 806 F.2d at 1476 (McKay, J., dissenting).

We hold that Gooch's warrantless arrest in his tent violated the proscription of the Fourth Amendment, absent exigent circumstances.

## V

 We review de novo whether exigent circumstances justify a warrantless arrest or seizure. *Echegoyen,* 799 F.2d at 1277–78. The district court's factual findings are reviewed for clear error. *Id.* at 1277. The government has the "heavy burden," *Alvarez,* 810 F.2d at 881, of showing that exigent circumstances "made the warrantless arrest imperative." *United States v. Al–Azzawy,* 784 F.2d 890, 894 (9th Cir.1985), *cert. denied,* 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986).

 Exigent circumstances are " 'those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search [or arrest] until a warrant could be obtained.' " *Id.* (citation omitted) (brackets in original). Exigent circumstances are present when "a reasonable person [would] believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. McConney,* 728 F.2d 1195, 1199 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### A

 The exigencies cited by the government in justifying the arrest in this case were the risk that evidence would be destroyed and the potential danger to the officers and other campers.[3] As the district court observed, there was "no independent indication" that the firearm would be destroyed, nor could it even be removed from the tent with the officers present.

The district court found the risk of harm to the officers and others to present a closer issue. The facts that Gooch was intoxicated, that a firearm had been discharged recently, and that people were leaving the campground in fear supported the officers' conclusion that there was an immediate threat to public safety. However, there was no actual ongoing threat. The district court found that the campground appeared quiet when the officers arrived in the daylight hours. The alleged fight and discharge of the firearm took place several hours before the arrest. The district court did not err in concluding that the deputies could not have reasonably believed that there was a present danger to other occupants of the tent or to other campers. *Alvarez,* 810 F.2d at 883–84.

The government compares the circumstances here to those in *Al–Azzawy.* In that case, we determined exigent circumstances existed on the sole basis that the police had been informed by a reliable person that the defendant possessed explosives. *Al–Azzawy,* 784 F.2d at 894. However, we expressly contrasted Al–Azzawy's circumstances with those addressed in *United States v. Morgan,* 743 F.2d 1158, 1161–1163 (6th Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). In *Morgan,* the court held that defendants' possession of automatic weapons did not give rise to exigent circumstances.

### B

 The search was also not justified by exigent circumstances, as the district court

---

**3.** The government also noted that problems with radio communication in the southwest corner of the county would have made obtaining a warrant inconvenient. "Police officers may not, in their zeal to arrest an individual, ignore the [F]ourth [A]mendment's warrant requirement merely because it is inconvenient." *United States v. Morgan,* 743 F.2d 1158, 1164 (6th Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).

found: "At the time of the search, the defendant was in custody, handcuffed, and locked in the back of a patrol car. He was not a danger to anyone, and he was the only one that the deputies had any reasonable grounds to believe had violated the law, or who could possibly have been a threat to them."

▮▮ The government argues the officers needed to search the tent immediately because the firearm presented a potential danger to the children at the campsite. The presence of a firearm alone is not an exigent circumstance. *Morgan,* 743 F.2d at 1167; *United States v. Gooch,* 780 F.Supp. 725, 732 (E.D.Wash.1991). The cases cited by the government involved circumstances where unsupervised children would be left inside the house with the weapon or explosives if the officer did not secure it. *Al–Azzawy,* 784 F.2d at 895; *United States v. Antwine,* 873 F.2d 1144, 1147 (8th Cir.1989); *United States v. Queen,* 847 F.2d 346, 353 (7th Cir.1988). In the instant case, no one remained in the tent at the time of the search. It would not have been difficult to prevent children or anyone else from entering the tent until a warrant was obtained. The government's argument logically would authorize any warrantless search where officers had reason to believe a firearm was involved.

This was not a case in which one or two police officers were forced to react quickly in an inaccessible locale that could only be reached on foot for some distance. The officers drove directly to the campground, only one mile off the main road, in two vehicles. They parked just 20 yards from the tent. Three officers were present to arrest Gooch, with another as backup. There was no ongoing threat. We hold that no exigent circumstances existed.

### VI

▮▮ The government finally contends the search falls into the "search incident to a lawful arrest" exception to the warrant requirement. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). As the arrest was not lawful, we need not decide whether the warrantless search was a valid search incident to a lawful arrest.

The district court's judgment is

AFFIRMED.

ALARCON, Circuit Judge, dissenting:

The majority has decided that the district court did not err in concluding that the totality of the circumstances did not justify a warrantless entry and search of Gooch's tent based upon exigent circumstances requiring immediate action to protect the officers from harm. I cannot join in their opinion because the district court erroneously found that the officers were told prior to the entry that Gooch was asleep. The majority, while conceding that this finding was clearly erroneous, has failed to discuss the impact of this error regarding an essential fact on the district court's conclusion that there were no exigent circumstances. Without a remand, this court cannot determine whether, when informed of its error, the district court would reverse its determination that there were no exigent circumstances, especially in light of the fact that it stated that the issue of exigent circumstances created a "difficult question" for the court.

### I.

To appreciate the gravity of the district court's factual error, it is necessary to consider the totality of circumstances known to the officers. At approximately 4:00 a.m. on July 29, 1990, Stevens County Sheriff's Deputies Ted Campbell and Ed Burns responded to a call from a man claiming to have been shot at the State of Washington Department of Natural Resources ("DNR") campground on Long Lake. While proceeding to the campground, the deputies encountered an automobile. The occupants of the car informed the deputies that Ken Gooch was "hurting people" at the DNR campground on Long Lake. The occupants also indicated that shots had been fired, but did not inform the deputies that Gooch fired the shots. While proceeding to the campground, the deputies encountered Marc Cole walking alongside the road. Mr. Cole stated that Gooch fired shots in his direction after they engaged in a family dispute. These events occurred between midnight and 2:00 a.m.

Deputies Campbell and Burns arrived at the campground at around 5:00 a.m., where they were subsequently joined by Deputy Steve Bruchman and a reserve deputy. Without a warrant, the deputies ordered Gooch from his tent. Gooch was searched and placed under arrest. After placing Gooch in a patrol car, the deputies ordered Mary Baker, Gooch's companion, from the tent. Approximately fifteen minutes later, the deputies conducted a warrantless search of the tent and located a loaded handgun under a mattress.

## II.

The district court found that upon arriving at the campground the deputies determined that Gooch was sleeping in his tent. During oral argument, we requested that counsel for Gooch file a supplemental brief indicating the portion of the record that supported this finding.

In his supplemental brief, Gooch asserts that the record shows that Sergeant Burns spoke with a pedestrian along the roadside on his way to the campground. According to Gooch, the pedestrian informed Sergeant Burns that Gooch was sleeping in the tent he shared with his girlfriend. Gooch acknowledges that Sergeant Burns did not testify, but explains that Deputies Campbell and Bruchman testified that Sergeant Burns had been informed that Gooch was asleep. Counsel for Gooch has misrepresented the evidence produced in the trial court. The record does not support the district court's finding that any of the officers were informed prior to the search that Gooch was asleep.

I agree with the majority that the district court's finding was clearly erroneous. After acknowledging the district court's error in footnote 1, the majority proceeds to make its own findings regarding whether exigent circumstances justified the search for the handgun without discussing whether the district court's clearly erroneous understanding of the facts caused it to grant the motion. Therefore, I assume that the majority has made a finding that it didn't matter what the officers were told regarding whether Gooch was asleep. This determination invades the province of the district court, which has the responsibility to determine factual matters.

## III.

Rule 12(e) of the Federal Rules of Criminal Procedure, which governs motions to suppress, requires that "[w]here factual issues are involved in determining a motion, the [district] court shall state its essential findings on the record." While Rule 12(e) does not address the precise issue presented here, i.e., what remedy is available to the Government when the district court has made a clearly erroneous finding on a material issue, clearly the drafters of Rule 12(e) assumed that the district court would make accurate factual determinations. A contrary conclusion would impute to Congress an intent to enact an absurd rule. We would be required to hold that Rule 12(e) is satisfied if findings are made by the trial court, regardless of the fact that there is no evidence in the record to support them.

I would hold that if a reviewing court determines that the district court has made a clearly erroneous factual determination on a material issue, a remand is required for further factual findings that reflect on the true state of the record. The district court must determine, in the first instance, whether the fact that the officers did not know whether Gooch was asleep before they ordered him out of the tent was a factor in persuading them that it was necessary to locate his firearm immediately to protect themselves and others at the campground from lethal force.

My conclusion that this court cannot substitute itself for the trial court in weighing the effect of the true circumstances relied upon by the officers in believing that exigent circumstances required a warrantless search is supported by the Supreme Court's analysis in *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). In *Murray,* federal law enforcement agents conducted a warrantless entry into a Boston warehouse where they observed bales of marijuana. *Id.* at 535, 108 S.Ct. at 2532. The agents placed the warehouse under surveillance and applied for a search warrant, without informing the magistrate of the ini-

tial entry or the marijuana they observed. *Id.* at 535–36, 108 S.Ct. at 2532. At issue was whether the second search was truly independent from the initial warrantless search. *Id.* at 542, 108 S.Ct. at 2535. The district court denied the motion and the appellate court affirmed, concluding that it was "absolutely certain that the warrantless entry in no way contributed in the slightest either to the issuance of a warrant or to the discovery of the evidence during the lawful search that occurred pursuant to the warrant." *Id.* at 542–43, 108 S.Ct. at 2536.

The Supreme Court determined that the record did not support the Court of Appeals' findings on the application of the independent source doctrine and remanded for further factual findings on the contested issue. *Id.* at 543–44, 108 S.Ct. at 2536. The Court concluded that "it is the function of the District Court rather than the Court of Appeals to determine the facts." *Id.* at 543, 108 S.Ct. at 2536. In a case such as this, where the district court has made erroneous factual findings, we may not substitute our judgment for that of the district court and make a factual finding that the totality of the circumstances did not establish exigent circumstances justifying the warrantless search of Gooch's tent and the seizure of his firearm.

We have previously relied on *Murray* in determining that Rule 12(e) requires the district court to make essential findings of fact when ruling upon a motion to suppress. *See United States v. Prieto–Villa*, 910 F.2d 601 (9th Cir.1990). In *Prieto–Villa*, the defendant was arrested while the police searched a co-defendant's apartment in the process of investigating a drug conspiracy. *Id.* at 602. Prieto filed a pre-trial motion to suppress the introduction of cocaine and post-arrest statements made to the police. *Id.* at 603. The district court denied his motion but failed to make sufficient factual findings to permit appellate review. *Id.* at 605–06. We held that Rule 12(e) required the district court to make appropriate factual findings and remanded for the development of an adequate record. *Id.* at 607. In determining that Rule 12(e) imposed a mandatory requirement on the district court, we cited *Murray* for the proposition that the district court, and not

the appellate court, is responsible for making factual findings. *Id.* at 608–610.

I believe it is particularly important that we remand this matter to the district court to rectify its unsupportive finding, because of the consequences of the district court's clear error. We have previously noted that a suppression hearing is "often as important as the trial itself." *Prieto–Villa*, 910 F.2d at 609 (quoting *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984)). This observation is particularly important in this case, as the Government has conceded that it would be unable to sustain its burden of proof in the absence of the physical evidence seized from Gooch's tent. In light of the fact that the district court stated that whether the facts in this case demonstrated a "difficult question," the district court resolved that question against the Government based on an erroneous factual finding. A remand is mandatory under the Supreme Court's decision in *Murray*, and the law of this circuit as explained in *Prieto–Villa*.

### IV.

The Government has also raised serious questions concerning Gooch's alleged violations of numerous Washington state regulations prohibiting the use of campground property primarily for residential purposes. The Government cites *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1985) for the proposition that a person must have a legitimate expectation of privacy to invoke the protection of the Fourth Amendment. *Id.* at 211, 106 S.Ct. at 1811. If these regulations were indeed violated, Gooch may not be able to demonstrate that he had a legitimate expectation of privacy in his tent. The Government, however, failed to raise this argument before the district court. Under the law of this circuit, "[i]ssues not presented to the trial court cannot generally be raised for the first time on appeal." *United States v. Flores–Payon*, 942 F.2d 556, 558 (8th Cir. 1991). Because I believe the Supreme Court's decision in *Murray* requires that we remand this case to the district court, the question whether Gooch had a legitimate expectation of privacy in a tent used as a

residence in violation of Washington law should be resolved in the district court.