**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Riad Abed AL–AZZAWY,
Defendant-Appellee.**

No. 85–5004.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 1985.

Decided Dec. 26, 1985.

Designated for Publication
March 11, 1986.

Mark H. Bonner, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellant.

John Gyorgy, Los Angeles, Cal., for defendant-appellee.

Before ANDERSON, BEEZER and BRUNETTI, Circuit Judges.

BEEZER, Circuit Judge:

The government appeals a district court ruling excluding certain evidence on the ground that it resulted from an unlawful warrantless arrest of appellee in his residence and an unlawful warrantless search. We reverse.

At approximately 9 a.m. on November 19, 1984, Los Angeles police were summoned to investigate a disturbance at a trailer park. Steven Williams told the officers that Riad Abed Al-Azzawy, a neighbor, had threatened to shoot Williams, to blow up the trailer park and to burn Williams' trailer. Williams also told the officers that Al-Azzawy had threatened him with a pistol the day before, and that a third party had told Williams that he had seen Al-Azzawy in possession of hand grenades and automatic weapons some days earlier.

Police officers then surrounded appellee's trailer with their guns drawn, and ordered appellee to come outside. When Al-Azzawy appeared, he was ordered to get on his knees and place his hands on or above his head, which he did. He was then frisked and questioned about the disturbance. Appellee admitted having firearms in his trailer.

According to the police, appellee and his wife were asked if their trailer could be searched, and both consented. Both denied ever being asked for their consent.

During the search the police seized sawed-off weapons, an automatic pistol, three hand grenades, gunpowder, a gallon jug full of gasoline with matches glued to it, and other items. Appellee was charged with possession of unregistered firearms and being an illegal alien in possession of a firearm.

The district court granted appellee's motion to exclude the unregistered firearms from evidence, holding that appellee was arrested in his home without a warrant or an exception to the warrant requirement. The court also held that appellee verbally consented to the search of his trailer, but that the consent was invalid, both because of the coercive circumstances and because it was tainted by appellee's prior illegal arrest. The court also ruled that the search was not justified by exigent circumstances. The government appeals.

On appeal, the government argues that appellee was initially only subjected to a *Terry* stop when he was ordered out of his trailer, and that the later warrantless arrest occurred outside the trailer. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20

L.Ed.2d 889 (1968). The district court's decisions to the contrary are questions of law subject to de novo review. *See United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

In *United States v. Morgan,* 743 F.2d 1158 (6th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985), the Sixth Circuit decided a case almost identical to the one at bar. While investigating a complaint of target shooting in a public park, a Sheriff was told by an unidentified observer that the suspects had numerous machine guns and other weapons, and that they had threatened to "kill any law that tries to arrest them." 743 F.2d at 1160. The Sheriff broadcast an alert describing the suspects' car, which was found at the home of defendant Morgan's mother. *Id.* Nine officers converged on the home, surrounded it, flooded it with spotlights, and summoned Morgan from the house with a bullhorn. 743 F.2d at 1161. After the suspects left the house, they were arrested, handcuffed and frisked, and the house was searched. *Id.*

The court held that the suspects had been arrested, saying:

> "These circumstances surely amount to a show of official authority such that 'a reasonable person would have believed he was not free to leave.'" *Florida v. Royer,* 460 U.S. [491, 501–03, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1983)].... Viewed objectively, Morgan was placed under arrest, without the issuance of a warrant, at the moment the police encircled the Morgan residence.

743 F.2d at 1164.

Similarly, the court rejected the argument that the actual arrest occurred outside the home because the agents did not cross the threshold:

> We agree with the Ninth Circuit that the important consideration in this type of case "is the location of the arrested person, and not the arresting agent, that determines whether an arrest occurs within a home."

Applying this rule here, it is undisputed that Morgan was peacefully residing in his mother's home until he was aroused by the police activities occurring outside. Morgan was then compelled to leave the house. Thus, as in *Johnson, supra,* "it cannot be said that [Morgan] voluntarily exposed himself to a warrantless arrest" by appearing at the door. On the contrary, Morgan appeared at the door *only because of* the coercive police behavior taking place outside of the house.... Viewed in these terms, the arrest of Morgan occurred while he was present inside a private home. Although there was no direct police entry into the Morgan home prior to Morgan's arrest, the constructive entry accomplished the same thing, namely, the arrest of Morgan. Thus, the warrantless arrest of Morgan, as he stood within the door of a private home, after emerging in response to coercive police conduct, violated Morgan's fourth amendment rights.

743 F.2d at 1166 (citations omitted).

The principles set forth in *Morgan* are consistent with the law of this circuit. In *United States v. Johnson,* 626 F.2d 753 (9th Cir.1980), *aff'd on other grounds,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), for example, two Secret Service agents approached the door of a suspect's home, drew their weapons, pointed them downward and knocked, at first identifying themselves by fictitious names. When the suspect opened the door, the agents identified themselves as special agents and asked to talk with the suspect. He told them to come in. This court began its analysis by stating that

> whether an arrest has occurred depends upon an objective, not subjective, evaluation of what a person innocent of a crime would have thought of the situation, given all of the factors involved. When an arrest has occurred depends in each case upon an evaluation of all the surrounding circumstances. Primary among these is a determination of whether or not the defendant was free to choose between terminating or continuing the encounter with the law enforcement officers....

From a review of all of the circumstances surrounding the encounter between Johnson and the special agents, we find that appellant's arrest occurred as he stood within his home at the doorway of his home and was first confronted by the agents with their guns drawn.... It is extremely doubtful that Johnson would have believed that he was free to leave at any time or to request the officers to leave after the initial encounter. A reasonable person, under those circumstances, would have thought he was under arrest.

626 F.2d at 755–56. *See also United States v. Patterson,* 648 F.2d 625, 632 (9th Cir.1981) ("Whether an arrest has occurred 'depends on all of the surrounding circumstances, including the extent that freedom of movement is curtailed and the degree and type of force or authority used to effectuate the stop.' ... The question is whether, under all of the circumstances, 'a reasonable person would conclude he was under arrest.' "). Regarding the exact location of the arrest, the court stated:

In this case, we are confronted with the situation where the suspect was arrested as he stood inside his home and the officers stood outside his home with drawn weapons. In these circumstances, it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home. Otherwise, arresting officers could avoid illegal "entry" into a home simply by remaining outside the doorway and controlling the movements of suspects within through the use of weapons that greatly extend the "reach" of the arresting officers.

626 F.2d at 757. The court distinguished cases upholding arrests at open doorways by noting that Johnson had opened his door only after the agents misrepresented their identities and that he invited them inside only after the door was opened and he was subjected to the coercive effect of their brandished weapons. *Id.* Since "Johnson's initial exposure to the view and physical control of the agents [and therefore to warrantless arrest] was not consensual on his part," this court held that the arrest occurred within a residence. *Id.*[1]

In the case at bar, the police had completely surrounded appellee's trailer with their weapons drawn and ordered him through a bullhorn to leave the trailer and drop to his knees. Appellee was not free to leave, his freedom of movement was totally restricted, and the officers' show of force and authority was overwhelming. Any reasonable person would have believed he was under arrest in these circumstances. Moreover, since appellee was in his trailer at the time he was surrounded by armed officers, and since he did not voluntarily expose himself to their view or control outside his trailer but only emerged under circumstances of extreme coercion, the arrest occurred while he was still inside his trailer. *United States v. Johnson, supra.*

We affirm the district court's ruling that appellee was arrested inside his residence without a warrant.

Appellee next contends that the arrest was not supported by probable cause

---

1. Appellant argues that *Morgan* (and, by implication, *Johnson* ) are both based on erroneous interpretations of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). It is true that *Payton* condemned actual physical police intrusion into the home in order to make an arrest. The *Morgan* court found *Payton* applicable, however, because it considered surrounding the house and ordering the suspect out to be a "constructive entry," and because the suspect emerged from the house only because of police coercion. 743 F.2d at 1166. Similarly, this court in *Johnson* noted the factual difference with *Payton* but explained that "[w]e doubt the Supreme Court would have reached a different result had the police stood [just outside] the doorway and immediately placed [the suspect] under arrest with weapons drawn" rather than crossing the threshhold to make the arrest. 626 F.2d at 757. Moreover, the court noted that neither the *Payton* nor the *Johnson* suspects *voluntarily* exposed themselves to the possibility of warrantless arrest. *Id.* Since this court construes *Payton* in much the same way the Sixth Circuit does, and since the *Morgan* court relied heavily on our *Johnson* decision, we cannot reject *Morgan* without at least implicitly overruling *Johnson.* We decline to do so.

because the police acted on the information of only one witness who was not previously known to be reliable, they did not attempt to corroborate the information, and the information about the hand grenades and automatic weapons was hearsay.

There is probable cause for a warrantless arrest and a search incident to that arrest if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime....

*United States v. Gonzales,* 749 F.2d 1329, 1337 (9th Cir.1984).

In the case at bar, Williams told the police that Al-Azzawy had threatened serious violence both aimed at persons and property and that Al-Azzawy possessed the means to carry out the threats. Regardless of whether the police had probable cause to suspect appellee of possessing illegal explosives or automatic weapons, we hold that they had probable cause to arrest him for assault.

■ Probable cause alone will not support a warrantless search or arrest in a residence, however, unless some exception to the warrant requirement is also present. *See Payton,* 445 U.S. at 590, 100 S.Ct. at 1382; *United States v. Salvador,* 740 F.2d 752, 758 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985). The government argues that appellee's warrantless arrest was justified by the exception of exigent circumstances.

■ The Ninth Circuit has defined exigent circumstances as " 'those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search [or arrest] until a warrant could be obtained.' " *United States v. Salvador,* 740 F.2d at 758 (quoting *United States v. Robertson,* 606 F.2d 853, 859 (9th Cir. 1979) ). The burden is on the government to show that exigent circumstances existed and made the warrantless arrest imperative. *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970);

*United States v. Salvador,* 740 F.2d at 758. We review the district court's ruling that exigent circumstances did not exist in this case de novo. *Id.; United States v. Hicks,* 752 F.2d 379, 383 (9th Cir.1985); *United States v. McConney,* 728 F.2d at 1204–05; E.R. 220.

■ Whether the facts known to the officers in this case were sufficient to give rise to exigent circumstances is a close question. On the one hand, Williams had told the police that appellee's threat of violence had been expressly conditioned on Williams somehow bothering his family again, all appeared calm around the Al-Azzawy trailer when the police arrived, there was no indication from appellee that he might be presently violent or try to flee, and the information concerning automatic weapons and explosives was entirely hearsay.

On the other hand, if the officers reasonably believed that appellee possessed illegal explosives and was in an agitated and violent state, there was a sufficiently substantial risk to human life to justify a warrantless arrest. *But cf. United States v. Morgan,* 743 F.2d at 1161–63 (no exigent circumstances in case involving possible automatic weapons in similar circumstances). The district court concluded that there was no indication that Williams was unreliable and that the officers were therefore entitled to rely on his hearsay statements regarding the grenades without obtaining independent confirmation. Since such reliance seems both reasonable and necessary under the facts of this case, we hold that exigent circumstances justified appellee's warrantless arrest. *See, e.g., United States v. Doe,* 764 F.2d 695 (9th Cir.1985); *United States v. Alfonso,* 759 F.2d 728 (9th Cir.1985).

The district court also ruled that although the Al-Azzawys had verbally consented to the search, the consent was invalid because it was not voluntary and because it was tainted by the illegal arrest. *See Florida v. Royer,* 460 U.S. 491, 507–08, 103 S.Ct. 1319, 1329–30, 75 L.Ed.2d

229 (1983) (illegal detention taints and invalidates consent search). Since we hold that exigent circumstances made the warrantless arrest legal, we need not discuss the latter issue.

 The government has the burden of demonstrating that consent to a warrantless search was voluntary. *United States v. Ritter,* 752 F.2d 435, 439 (9th Cir.1985). Voluntariness is a question of fact to be determined from all the surrounding circumstances. *Id.* A trial court's finding on voluntariness should not be overturned unless it is clearly erroneous. *United States v. Faherty,* 692 F.2d 1258, 1260–61 (9th Cir.1982).

Although the Al-Azzawys did not argue that their consent was coerced, there were sufficient facts to support such a conclusion by the district court. The Al-Azzawys had been approached by numerous police officers with their guns drawn while Mr. Al-Azzawy remained on his knees with his hands on his head. *See United States v. Mendenhall,* 446 U.S. 544, 559, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (whether suspect entered the coercive surroundings voluntarily found relevant to the validity of consent); *United States v. Perez,* 644 F.2d 1299, 1303 (9th Cir.1981) (fact that suspects were approached by customs agents with drawn weapons one factor in finding consent involuntary). The Al-Azzawys were never informed of either their *Miranda* rights or their right to refuse consent to the search. *United States v. Mendenhall,* 446 U.S. at 558–59, 100 S.Ct. at 1879–80 (knowledge of right to refuse consent "highly relevant" to determination that there was consent); *United States v. Ritter,* 752 F.2d 435, 439 (9th Cir.1985) (absence of *Miranda* warnings is one factor in determining voluntariness of consent). Under these circumstances, we cannot say that the district court was clearly erroneous in finding that the consent was not voluntary.

**2.** Our decision makes it unnecessary to address the government's argument that we should create a good-faith exception to the exclusionary rule for police conduct.

 The same factors and analysis apply to the presence of exigent circumstances for the warrantless trailer search that apply to the warrantless arrest. Since the police reasonably believed that the trailer contained explosives and that they were not able to arrest all of the persons entitled to enter the trailer (such as appellee's two small children), we hold that the warrantless search of the trailer was justified by exigent circumstances. *See United States v. Williams,* 626 F.2d 697, 703 (9th Cir.) (possibility of bomb in car "is an exigent circumstance sufficient to justify an immediate [warrantless] search"), *cert. denied,* 449 U.S. 1020, 101 S.Ct. 586, 66 L.Ed.2d 482 (1980).

We reverse the district court's decision to exclude evidence on the grounds that the warrantless arrest and search were justified by exigent circumstances.[2] The case is remanded for further proceedings consistent with this opinion.