**William James SEPATIS, Plaintiff,**

v.

**CITY AND COUNTY OF SAN FRANCISCO, et al.,
Defendants.**

Nos. C 00–1626 MHP, C 00–2299 MHP.

United States District Court,
N.D. California.

Aug. 15, 2002.

George G. Benetatos, Law Office of George G. Benetatos, Steve Lau, Law Offices of Steve Lau, John Houston Scott, The Scott Law Firm, San Francisco, CA, for plaintiff.

William James Sepatis, San Francisco, CA, pro se.

Jason P. Gonzalez, Maxwell S. Peltz, City Attorney's Office, L. Jay Pedersen, Bledsoe Cathcart Diestel & Pedersen LLP, San Francisco, CA, Stuart Charles Gilliam, McNamara, Dodge, Ney, Beatty, Slattery & Pfalzer LLP, Walnut Creek, CA, for defendants.

## MEMORANDUM AND ORDER

### Cross–Motions for Summary Judgment

PATEL, Chief Judge.

This action involves consolidated lawsuits against the City and County of San Francisco, the San Francisco Police Department, Police Chief Fred Lau, Lieutenant Joseph Dutto, Sergeant William Griffin, and Officers David Parry, Sean McEllistrim, Keita Moriwaki, Robert Deleon, Robert Canedo and Matthew Cole ("defendants"). The related complaints allege five causes of action, including: (1) a federal claim of violation of federal civil rights pursuant to 42 U.S.C. § 1983; and state law claims of (2) negligence, (3) negligent training and supervision, (4) intentional infliction of emotional distress and (5) negligent infliction of emotional distress. Plaintiff's original complaints also raised a related sixth cause of action for malicious prosecution against his neighbors. Plaintiff, William James Sepatis, has since abandoned his state law claims, leaving only a section 1983 claim against the city defendants. Now before the court are the parties' cross-motions for summary judgment on this claim. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court hereby enters the following memorandum and order.

*BACKGROUND*[1]

These consolidated actions challenge two warrantless arrests, occurring on April 22, 1999 and May 24, 1999 respectively.

The first incident occurred on April 22, 1999 when four of plaintiff's neighbors

---

1. Unless otherwise specified, facts are taken from the parties' Joint Statement of Undisput-ed Facts ("JUF").

complained to the San Francisco police about his behavior. The neighbors reported that Sepatis was "chanting and screaming in Greek" and playing extremely loud music out of his open windows. The neighbors further reported that Sepatis had shouted "Go back where you came from! Jews!" and "I'm going to execute you!"[2] This behavior was consistent with plaintiff's prior conduct. In fact, Sepatis had often harassed his neighbors, shouting racial epithets and cursing. The neighbors did not report any history of physical violence, however. Nor did they believe that Sepatis possessed a weapon.

Plaintiff was relatively silent when the police arrived. He did not shout from the window and stopped playing music within minutes of defendant Moriwaki's arrival. Based on the information given by plaintiff's neighbors, however, defendant Dutto decided to arrest plaintiff for making threats. Accordingly, Dutto knocked and announced himself at plaintiff's residence. While Dutto was announcing his presence, Sepatis dropped an odorless liquid on defendant Cole, another officer on the scene.[3] Cole did not appear to be in pain or injured; he did not report a burning sensation or any physical complaints. In fact, it does not appear from any evidence in the record that the liquid left even a stain. Rather, co-defendant Moriwaki wiped the liquid from Cole with a Kleenex. Defendants Cole and Moriwaki continued to summons plaintiff at his door, to no avail. Plaintiff again dispensed a clear, odorless liquid from his window. At this time, defendant Dutto kicked open plaintiff's door and entered the house. Defendants ultimately arrested plaintiff for assaulting an officer and threatening his neighbors.

Following the April 22 incident, plaintiff's neighbors sought a temporary restraining order to prevent future disturbances. Also at this time, plaintiff evidenced some suicidal tendencies and was transported to San Francisco General Hospital on a 5150 hold, referring to section 5150 of the California Health and Safety Code which allows for 72-hour evaluation of a person believed to be a danger to himself or others. He was discharged shortly after and apparently renewed his disruptive activities.

On May 24, 1999, one of plaintiff's neighbors contacted the police, reporting that Sepatis was playing loud music in violation of the restraining order. The neighbor contacted the police again one and one-half hours later, withdrawing the complaint. Despite this cancellation, defendants Parry and McEllistrim responded to the call. Upon their arrival, plaintiff's neighbors reported that Sepatis had earlier put a music speaker in his window, faced it toward a neighbor's apartment building and turned up the volume. Plaintiff's house was silent when the officers arrived, however, they decided to speak with plaintiff regarding the prior disturbance. Defendants could view Sepatis through the window near the front door. They noticed that plaintiff was not holding any weapons. Officer Parry did not believe that his safety was in jeopardy. Nor does it appear that the other officers feared for their safety. Nonetheless, in light of the neighbors' complaints, the April 22, 1999 arrest, plaintiff's prior 5150 detention, and incoherent ramblings from the interior of plaintiff's house,[4] de-

**2.** It is not clear whether these neighbors were sufficiently familiar with Greek to know Sepatis was speaking in Greek, let alone whether they were able to translate it.

**3.** This was done without so much as a "Guardez l'eau" ("Watch out for the water"), a warning commonly used in the Middle Ages as householders tossed water or chamber pot contents from their upstairs windows.

**4.** Apparently the officers were not as fluent in Greek as the neighbors.

fendant Dutto decided to make a forced entry. Defendants ultimately charged plaintiff with disturbing the peace; violating a court order; and resisting, delaying, or obstructing peace officer duties. Defendants declined to 5150 plaintiff, deciding to wait for further assessment after he was booked.

Plaintiff now challenges each of these warrantless arrests and protective sweeps.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The moving party for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the non-moving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.1994). Nor is it sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence. See National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir.1983). If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323, 106 S.Ct. 2548.

On motion for summary judgment, the court does not make credibility determinations, for "the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Liberty Lobby, 477 U.S. at 249, 106 S.Ct. 2505. Inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. See Masson v. New Yorker Magazine, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

### II. Qualified Immunity

Qualified immunity shields public officials from liability for civil damages so long as their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991).

A court considering a claim of qualified immunity must conduct a two-step inquiry. As a threshold question, the court must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If no constitutional right has been violated, there is no need for further analysis. *Id.* If a constitutional right has been violated, however, the court must next consider whether this right was clearly established. *Id.; Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).

 The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir.2000); *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir.1992). If plaintiff cannot meet this burden, the inquiry ends and defendants are entitled to summary judgment. *See Saucier*, 533 U.S. at 202, 121 S.Ct. 2151; *Romero*, 931 F.2d at 629 ("If the controlling law is not clearly established, a reasonable person would not be expected to know how to structure his conduct in order to avoid liability") (internal quotation omitted). If plaintiff can show the right was clearly established, the burden shifts to defendants to prove their actions were nonetheless reasonable. *See Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir.1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir.1995); *Shoshone–Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1285 (9th Cir.1994); *Maraziti*, 953 F.2d at 523. When the "essential facts are undisputed, or if no rea-

sonable juror could find otherwise, then the question [of reasonableness] is appropriately one for the court." *See Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1100 (9th Cir.1995).

As qualified immunity provides immunity from suit and is not merely a defense to liability, it is important to "resolv[e] immunity questions at the earliest possible stage in litigation." *See Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Accordingly, when "the underlying facts are undisputed, a district court must determine the issue on motion for summary judgment." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993); *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 (highlighting preference for resolving immunity questions on summary judgment).

## DISCUSSION

### I. The Fourth Amendment

The Fourth Amendment precludes indiscriminate searches and seizures absent a warrant. A warrant may not issue without probable cause.[5] This protection is particularly pronounced within the boundaries of a person's home. Indeed, "the right of a man to retreat into his home and there be free from unreasonable governmental intrusion" stands "[a]t the very core" of the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)); *see also United States v. United States Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (noting that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"); *Dorman v. United States*, 435

---

**5.** The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const.Amend. IV.

F.2d 385, 389 (D.C.Cir.1970) ("Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment").

█ The Supreme Court has recognized the sanctity of the home, emphasizing that "exceptions to the warrant requirement are 'few in number and carefully delineated.'" *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (quoting *United States Dist. Court*, 407 U.S. at 318, 92 S.Ct. 2125). Such arrests may not be made absent both probable cause *and* exigent circumstances. *Payton*, 445 U.S. at 588–89, 100 S.Ct. 1371; *La-Londe v. County of Riverside*, 204 F.3d 947, 954 (9th Cir.2000) ("[I]t is well settled constitutional law that, absent exigent circumstances, probable cause alone cannot justify an officer's warrantless entry into a person's home."); *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir.1992); *United States v. Salvador*, 740 F.2d 752, 758 (9th Cir.1984); *United States v. Al-Azzawy*, 784 F.2d 890, 894 (9th Cir.1985).

█ Exigent circumstances supporting a warrantless arrest should seldom be found. *LaLonde*, 204 F.3d at 956 ("Supreme Court and Ninth Circuit cases have strictly limited the exigency exception, especially in the context of warrantless arrests in the home."). Such circumstances are narrowly construed and limited to emergency situations demanding an immediate response to prevent serious injury to the arresting officers or other persons. *Id.; United States v. Echegoyen*, 799 F.2d 1271, 1278 (9th Cir.1986); *People v. Ramey*, 16 Cal.3d 263, 276, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976) ("imminent danger to

life or serious damage to property"). The likelihood of this threat is greater if it appears that the suspect is armed, *see Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), or the underlying offense is serious. *See Welsh*, 466 U.S. at 753, 104 S.Ct. 2091 ("[A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made").[6] Exigent circumstances may also exist if a delay would cause the destruction of evidence, the escape of the suspect, or otherwise impair the law enforcement process. *Salvador*, 740 F.2d at 758; *United States v. Gooch*, 6 F.3d 673, 679–80 (9th Cir.1993).

The existence of exigent circumstances is to be determined by the court, rather than the arresting officer. As Justice Jackson recognized:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). This determination must be made after a consideration of the "totality of circumstances known to the officers at the time of the warrantless intrusion." *United States v. Licata*, 761 F.2d 537, 543 (9th Cir.1985). Accordingly, the court must consider the

---

**6.** Although these factors are relevant, they are not dispositive. *See, e.g., United States v. Gooch*, 6 F.3d 673, 680 (1993) ("The presence of a firearm alone is not an exigent circumstance"); *LaLonde*, 204 F.3d 947 (declining to find exigent circumstances notwithstanding suspect's ownership of a weapon); *Minnesota v. Olson*, 495 U.S. 91, 100–101, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (no exigency even though "a grave crime was involved"); *United States v. George*, 883 F.2d 1407 (9th Cir.1989) (no exigent circumstances justifying warrantless entry into a bank robber's home involved in security guard shooting).

allegedly exigent circumstances in each of the disputed arrests.

### 1. *April 22, 1999 Arrest*

Plaintiff first challenges the warrantless search and arrest of April 22, 1999. To overcome this challenge, defendants must prove exigent circumstances supported the arrest. *See Al–Azzawy*, 784 F.2d at 894. To this end, defendants emphasize plaintiff's prior threats to his neighbors and contemporaneous assault of the arresting officers with a clear, odorless liquid. These actions ostensibly indicate plaintiff posed an imminent threat to others, supporting a finding of exigency. Defendants also contend that the warrantless entry was necessary to prevent plaintiff from destroying evidence of his assault. Defendants are mistaken.

■ Exigent circumstances may be found where a suspect presents an imminent threat to the community. For instance, in *United States v. Salvador*, 740 F.2d 752, the Ninth Circuit allowed a warrantless search of a suspect who was affiliated with an armed bank robbery group with a known propensity for violence. Notably, at the time of the arrest, the officers "saw the window curtains rapidly close and heard some commotion from within the residence," supporting their "belie[f that] the occupants were getting ready to 'do battle.'" *Id.* at 756. Likewise, in *Al–Azzawy*, 784 F.2d 890, the court found exigent circumstances where the suspect had threatened to shoot his neighbor, blow up a trailer park and burn his neighbor's trailer. Significantly, *Al–Azzawy* had been seen with hand grenades and automatic weapons a few days prior. *Id.* at 891. Thus, Al–Azzawy not only made terrorist threats, but possessed the equipment to see them through.

■ The facts of the instant action are readily distinguishable. Defendants had no reason to suspect Sepatis was armed at the time of the arrest. *See* JUF 2 (plaintiff's neighbors did not know if he had any weapons); JUF 15 (plaintiff's neighbors never mentioned to the police that they thought plaintiff had a weapon). Nor did the officers hear Sepatis make any threats in their presence. JUF 16. Although plaintiff's neighbors reported that he frequently yelled from his window in an unknown language, JUF 8, they did not indicate that he had ever displayed a weapon while doing so. Moreover, notwithstanding the neighbors' apparent fears that Sepatis was going to hit them, JUF 10–12, they had never before been physically attacked by Sepatis, JUF 17 & 20. In short, the evidence before defendants at the time of the April arrest suggested plaintiff was an irksome neighbor, but not an imminent threat to the community.

Nor does defendants' purported concern about the potential toxicity of the liquid discharged from plaintiff's window support a finding of exigent circumstances. Defendants concede that the unknown liquid was odorless. JUF 38 & 54. They also admit that defendant Cole did not experience a burning sensation when the liquid was discharged. JUF 40. At the time of the "assault," defendant Cole simply wiped the liquid with a Kleenex, JUF 39; he never sought medical treatment. JUF 41. This scarcely seems an appropriate response for a potentially toxic chemical. *See Echegoyen*, 799 F.2d at 1279 (defendants responded to a potential fire hazard by turning off the burners, ventilating the premises, and summoning the firefighters to inspect the property).

Defendants also contend that the warrantless arrest was necessary to prevent plaintiff from destroying evidence of the assault. In fact, the possible destruction of evidence *may* occasionally trump the Fourth Amendment. *See United States v. George*, 883 F.2d 1407, 1414 (9th Cir.1989)

("[O]fficers need not wait for a warrant if they reasonably believe that evidence is being currently removed or destroyed"); *United States v. Ojeda,* 276 F.3d 486, 488 (9th Cir.2002) (allowing warrantless search where officers detected a strong chemical odor and saw the suspect enter a likely methamphetamine lab and lock the door); *but see Welsh,* 466 U.S. at 753, 104 S.Ct. 2091 (1984) (no exigent circumstances despite transient nature of petitioner's blood alcohol content). Here, however, defendants did not need to enter plaintiff's house to preserve the odorless liquid. The liquid had already saturated one officer's clothing. Another sample had fallen to the sidewalk below. Defendants could readily test these sources to discover the nature of the liquid. Their failure to do so suggests that this alleged exigency was pretextual.

The "totality of the circumstances" indicate that defendants violated plaintiff's Fourth Amendment rights by their warrantless intrusion on April 22, 1999. *See Licata,* 761 F.2d at 543.

### 2. *May 24, 1999 Arrest*

Plaintiff next challenges the warrantless search and arrest of May 24, 1999. Defendants contend that the warrantless intrusion was necessary to prevent Sepatis from harming himself and others. Defs.' Mot. at 11:16. In support, they highlight plaintiff's violation of the restraining order, the fact that plaintiff had recently been placed under observation for suicide threats, and that he was mumbling and making rambling statements on the eve of the arrest. *Id.* at 11:6–18. Several factors belie defendants' claims of exigency.

Exigent circumstances may exist where a party appears to be suicidal. For in-

stance, the Sixth Circuit found exigent circumstances justified the warrantless entry into an individual's home where the officers were aware that the person was mentally disturbed, possessed two large knives, and had escaped from an institution that afternoon. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1043–44 (6th Cir. 1992). The officers had received a radio transmission describing the individual as "suicidal, homicidal, and a hazard to police." *Id.* at 1039. When the officers arrived on the scene, the individual had turned out the lights and fallen silent.

■ The instant case is readily distinguishable. Notably, Sepatis was not holding any weapons at the time of his arrest. JUF 87.[7] Nor did the neighbors provide any evidence that plaintiff possessed any weapons. JUF 14–15. Plaintiff, in fact, had been discharged from a 5150 hold ten days prior to the arrest and was not making suicidal gestures or threats when arrested; loud music is not an indicator of suicidal tendencies. While defendants maintain Sepatis was mumbling incoherently inside the house, JUF 91, they also note that he had asked to call his attorney. JUF 88. This request demonstrates a lucidity not typically associated with a suicidal man. Significantly, despite defendants' purported concern for plaintiff's safety, they declined to refer him under 5150 at the time of the arrest. JUF 96. Apparently, they believed plaintiff was stable enough not to warrant prompt medical treatment.

Nor does the evidence indicate that Sepatis presented an immediate threat to others. Plaintiff merely violated a restraining order by disturbing the peace. He did not

---

7. Defendants minimize this fact, insisting plaintiff had access to kitchen knives. Defs.' Opp'n at 4 n. 3. This suggestion is absurd. Permitting a warrantless arrest because the individual within has ready access to cutlery would eviscerate the Fourth Amendment. Officers may not execute a warrantless arrest absent evidence that plaintiff intended to use such tools to harm himself.

threaten to blow up a neighbor's house, *see Al–Azzawy,* 784 F.2d 890, nor did he possess the weapons to carry out such a threat. JUF 87; *see Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (finding of exigency depends upon likelihood suspect is armed). In fact, none of the officers appeared to believe that their safety was in jeopardy. JUF 92–93. Although back-up arrived at the scene, JUF 80, the responding officers had not thought back-up was required. JUF 77. Nor did police headquarters. JUF 72 (canceling the call for service). Even the reporting neighbors ultimately withdrew their complaint, JUF 71, suggesting they did not fear for their safety. In short, the undisputed evidence reveals that neither the neighbors nor officers would have been harmed by waiting to obtain a warrant. Failure to obtain such warrant violated plaintiff's Fourth Amendment rights.

## II. *Qualified Immunity*

All of the individual defendants, with the exception of Lieutenant Dutto, seek qualified immunity. Plaintiff moves for summary judgment only as to Lieutenant Dutto. These motions are appropriately resolved on summary judgment. *See Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."); *Robinson v. Solano County,* 278 F.3d 1007 (9th Cir.2002) (granting summary judgment on qualified immunity grounds in a section 1983 excessive force action).

While defendants move for summary judgment on qualified immunity, they fail to provide the court with legal support for this assertion. To the contrary, when asked to submit supplemental briefs, defendants introduced evidence revealing that they were each involved in the challenged activities. Moreover, defendants concede that defendant Dutto was an integral participant on both April 22 and May 24.

To determine whether defendants are protected by qualified immunity, the court must conduct a two-step inquiry. *Saucier v. Katz,* 533 U.S. at 200, 121 S.Ct. at 2156. The court must first determine whether defendants violated a constitutional right. *Id.* If so, the court must next decide whether the right was "clearly established." *Id.* A right is clearly established if its contours are sufficiently clear that a reasonable officer in similar circumstances would have known he was violating that right. *Id.* at 202, 121 S.Ct. at 2156.

The two-step qualified immunity analysis "acknowledges that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Id.* at 205, 121 S.Ct. at 2158. An officer might correctly perceive all of the relevant facts but have a mistaken belief about whether such facts rise to the level of exigency justifying a warrantless arrest. If the officer's construction of the law is reasonable, however, the officer is entitled to the immunity defense. *Id.* Thus, the court may find defendants immune from liability, notwithstanding a violation of plaintiff's constitutional rights. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) (qualified immunity appropriate where officers "reasonably but mistakenly" believe exigent circumstances or probable cause are present); *Robinson,* 278 F.3d at 1015–16 (finding defendants entitled to qualified immunity despite violation of the Fourth Amendment).

The court has already explained that plaintiff's account of the facts, if true, would establish a violation of a constitu-

tional right.[8] Defendants suggest Lieutenant Dutto alone was responsible for this violation, protecting the remaining defendants from liability. The evidence undermines this theory.

While Dutto was the highest ranking officer on the scene during both incidents, *see* Gonzalez Dec., Exh. A. ("Dutto Dep.") at 17:12–19:21, 69:8–70:12, each of the named defendants contributed to the constitutional violation. Sergeant Griffin entered plaintiff's house during both arrests. *See id.*, Exh. B ("Griffin Dep.") at 23:13–18, 52:7–13. Moriwaki, one of the arresting officers, JUF 56, was the first to arrive on April 22. JUF 3. He spoke to plaintiff's neighbors, Gonzalez Dec., Exh. D ("Moriwaki Dep.") at 25:8–26:24, related these conversations to Dutto, JUF 32–33, and conducted a warrantless protective sweep of plaintiff's home. Moriwaki Dep. at 56:11–15. Moriwaki's conversation with Dutto prompted him to arrest plaintiff. JUF 33. DeLeon provided backup and transported plaintiff to the station on April 22. DeLeon Decl. ¶¶ 2–4. Officers Parry and McEllistrim were the first officers to arrive on May 24, 1999. *See* JUF 75. They spoke with plaintiff's neighbors, JUF 82, attempted to make contact with plaintiff, JUF 84–86, and entered plaintiff's home. Gonzalez Decl., Exh. C. ("Parry Dep.") at 43:12–17. Officer Parry was the reporting officer. *Id.* at 41:2–4; *see also* JUF 97 (Parry completed the Citizen's Arrest form). He remained at the scene after plaintiff was taken to the station. Parry Dep. at 57:13–58:10.[9]

■ Under these facts, a reasonable jury could find that the individual defendants were active participants in the alleged violation. *See Jones v. Williams,* 286 F.3d 1159, 1163 (9th Cir.2002) (requir-

ing personal participation for section 1983 liability to attach); *Chuman v. Wright,* 76 F.3d 292, 294 (9th Cir.1996) (barring section 1983 liability on the basis of group membership absent individual involvement). Other circuits have found active participation in similar circumstances. *See James ex rel. James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990) (finding active participation where back-up officers remained armed on the premises during the search); *Melear v. Spears,* 862 F.2d 1177, 1186 (5th Cir.1989) (finding active participation where defendant stood armed at the door as back-up while an unconstitutional search proceeded inside); *Patzner v. Burkett,* 779 F.2d 1363, 1371 (8th Cir.1985) (finding active participation where defendant entered plaintiff's home and assisted in handcuffing plaintiff). The fact that several of the individual defendants remained outside the premises is not dispositive. *See, e.g., James,* 909 F.2d at 837 (back-up officers can be liable as participants in illegal search conducted by other officers). Nor can defendants escape liability by invoking Dutto's supervisory authority. *California Attorneys for Criminal Justice v. Butts,* 195 F.3d 1039, 1049 (9th Cir.1999) (no immunity despite officers' alleged reliance on training and training materials); *Patzner,* 779 F.2d at 1371 (no immunity though defendant was acting pursuant to deputy sheriff's orders); *Putman v. Gerloff,* 639 F.2d 415, 422–23 (8th Cir.1981) (claim for immunity may not be based solely on fact that defendant was following instructions).

Although the court concludes that a reasonable jury could find each of the individual defendants actively participated in the constitutional violation, they may nonetheless claim qualified immunity if the law

---

**8.** Notably, the relevant facts are undisputed.

**9.** Defendants failed to provide any evidence, by way of affidavit or otherwise, regarding

officers Canedo or Cole. This precludes summary judgment on qualified immunity as to these defendants.

was not clearly established at the time of the violation. This question must be examined in light of the particular facts and circumstances of the case. *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. at 2156; *Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039 (requiring a "particularized" analysis). Thus, it is not enough that the Fourth Amendment's protection against unreasonable searches and seizures is clearly established. Nor is it sufficient that a reasonable officer would know that a warrantless arrest may not be executed absent probable cause and exigent circumstances. The court must determine whether a reasonable officer would have believed exigent circumstances existed in this particular case. More specifically, the court must consider whether a reasonable officer would have believed that plaintiff presented an imminent threat to the arresting officers, the neighbors or himself on either April 22 or May 24, 1999.[10]

### 1. *April 22, 1999 Arrest*

It is a " 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586–87, 100 S.Ct.

1371, 1380, 63 L.Ed.2d 639 (1980). Such arrests are prohibited absent probable cause and exigent circumstances. *Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984); *LaLonde v. County of Riverside*, 204 F.3d 947, 954 (9th Cir.2000) ("[I]t is well settled constitutional law that, absent exigent circumstances, probable cause alone cannot justify an officer's warrantless entry into a person's home").[11] The test for proving such exigency is stringent. *See Welsh*, 466 U.S. at 749–50, 104 S.Ct. at 2097 ("Exceptions to the warrant requirement are 'few in number and carefully delineated[.]' ... [T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.") (quotation omitted). Accordingly, a court will not find exigent circumstances unless securing a warrant would present a substantial and imminent risk of harm. *United States v. Gooch*, 6 F.3d 673, 679–80 (9th Cir.1993); *United States v. Al–Azzawy*, 784 F.2d 890, 894 (9th Cir. 1985); *United States v. Salvador*, 740 F.2d 752, 758 (9th Cir.1984). In light of this extensive precedent, defendants may not claim qualified immunity unless a reasonable officer would have believed the circumstances surrounding the April 22, 1999 arrest were exigent.

Defendants could not reasonably believe Sepatis presented a substantial and imminent risk to others. Plaintiff had long

---

**10.** The court may make this determination absent a case mirroring the precise factual circumstances of the challenged arrests. *Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1131 (9th Cir.2002); *Deorle v. Rutherford*, 272 F.3d 1272, 1275 (9th Cir. 2001). To hold otherwise would allow "officers [to] escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle*, 272 F.3d at 1274–75. Thus, the fact that the officers have not previ-

ously been assaulted with an odorless liquid is not dispositive. Instead, the court considers the contours of Fourth Amendment law at the time of the arrest. *See Saucier*, 533 U.S. at 202, 121 S.Ct. at 2156.

**11.** Defendants cannot claim to be ignorant of this requirement. In fact, defendants note that "Departmental policy requires an officer to get a supervisor's approval before making a forced entry into a home without a warrant, unless the situation involves hot pursuit or exigent circumstances." JUF 31.

made incredible verbal threats to his neighbors. JUF 8 & 10. Despite this history, he had never resorted to violence nor used a weapon. JUF 15, 17, 20. Defendants were aware of this at the time of the arrest. JUF 15, 17, 20, 32. A reasonable officer would not conclude that an unarmed man would harm his neighbors without any apparent capability of doing so. Moreover, if plaintiff attempted to leave his residence, the officers could easily perform a valid public arrest. Nor could the officers reasonably believe they would be harmed by the clear, odorless liquid discharged from plaintiff's window. Defendants did not experience a burning sensation; they never went to the hospital. JUF 39–41. A reasonable officer would not feel threatened by an odorless, painless liquid that could be removed with a Kleenex. JUF 39. In fact, the evidence indicates that defendants believed the attack was insignificant.

The police bear the burden of showing exigent circumstances. *Welsh*, 466 U.S. at 749–750, 104 S.Ct. at 2097; *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971). Defendants have failed to meet this burden. They have not provided any evidence that would support a reasonable belief of substantial and imminent harm. In fact, defendants' supplemental brief fails to address this issue entirely. A reasonable officer in defendants' position would have known that his conduct violated plaintiff's Fourth Amendment right to be free from warrantless arrests absent exigent circumstances. Accordingly, the individual defendants may not claim qualified immunity on summary judgment for the April arrest.

### 2. *May 24, 1999 Arrest*

A reasonable officer would not believe exigent circumstances supported the warrantless entry and arrest on May 24, 1999. In fact, defendants failed to submit any evidence demonstrating the reasonableness of their actions. Accordingly, the court denies defendants' motion for summary judgment on this claim.

Defendants have not provided any evidence that Sepatis posed a substantial and imminent threat to others on May 24, 1999.[12] While plaintiff had historically been an annoyance to his neighbors, the initial citizen's complaint reported only that Sepatis was playing loud music. JUF 69. This complaint was ultimately withdrawn, JUF 71, and the responding officers did not hear any loud music from plaintiff's residence on May 24. JUF 78–79. By their own admission, defendants did not fear for their own safety at the time of the arrest. JUF 77, 92–93. Nor do they offer any evidence that they believed Sepatis posed a significant or specified threat to others. To the contrary, there is no evidence that plaintiff possessed any weapons. JUF 14–15, 87.

Nor would a reasonable officer believe Sepatis posed an immediate threat to himself. In fact, the officers noticed that plaintiff was not holding any weapons at the time of the arrest. JUF 87. Defendants do not provide any evidence that plaintiff had made suicidal gestures on May 24, 1999. The officers apparently believed Sepatis was suicidal on May 24 because he had been suicidal in the past. This belief is not reasonable. To provide immunity based on plaintiff's mental health history would allow officers to rely on propensity evidence traditionally es-

**12.** Defendants suggest plaintiff's history of assault supported the May 24 arrest. Defs.' Mot. at 11:11–18. To the contrary, the alleged assault was with a clear, odorless, apparently harmless liquid. JUF 38–40, 54. This history merely reaffirms plaintiff's generally non-violent record.

chewed by our judicial system. Accordingly, defendants' motion for summary judgment as to qualified immunity is denied.

Plaintiff moves for summary judgment only as to Lieutenant Dutto. To prevail, plaintiff must prove Dutto violated a "clearly established" right. *See LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1157 (9th Cir. 2000). Plaintiff has met this burden. The burden thus shifts to Dutto to prove the reasonableness of his actions. *See Doe v. Petaluma City Sch. Dist.,* 54 F.3d 1447, 1450 (9th Cir.1995). Defendants have not introduced any evidence to meet this burden. To the contrary, they acknowledge that Dutto was the supervising officer on both April 22 and May 24. *See* Defs.' Supp.Br. As such, Dutto was directly responsible for decisions regarding plaintiff's warrantless arrest and related constitutional violations. *See* Gonzalez Dec., Exh. A at 17:12–19:21, 53:17–21, 69:8–70:12, 118:1–21. These decisions were patently unreasonable. No reasonable jury could find otherwise. Accordingly, plaintiff is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Defendant Dutto may not claim qualified immunity at trial.

### III. *Municipal Liability*

▉▉▉▉ Local governments are "persons" subject to liability under section 1983 where official policy or custom causes a constitutional tort. *See Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A city or county may not, however, be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior. See Board of County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell,* 436 U.S. at 691, 98 S.Ct. 2018; *Fuller v. City of Oakland,* 47 F.3d 1522, 1534 (9th Cir.1995). Accordingly, a municipality is not liable for the random acts or isolated incidents of unconstitutional action by a non-policymaking employee. *See McDade v. West,* 223 F.3d 1135, 1142 (9th Cir.2000); *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996); *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1444 (9th Cir.1989). Rather, to impose municipal liability for a violation of constitutional rights, a plaintiff must show: (1) that plaintiff was deprived of a constitutional right; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference of plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation. *See Plumeau v. Sch. Dist. # 40 County of Yamhill,* 130 F.3d 432, 438 (9th Cir.1997).

Sepatis has made a sufficient showing that his constitutional rights were violated to withstand summary judgment. Municipal liability thus depends upon the existence of a custom or policy permitting such unconstitutional arrests. Liability based on a municipal policy may be satisfied in three ways:

(1) by showing that a municipal employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice that is the customary operating procedure of the local government entity;

(2) by establishing that the individual who committed the constitutional tort was an official with final policymaking authority and that the challenged action itself was an act of official governmental policy; or

(3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it. *See Fuller,* 47 F.3d at 1534; *Gillette v. Delmore,* 979 F.2d 1342, 1346–47 (9th Cir. 1992).

▉▉▉▉ Defendants move to dismiss plaintiff's *Monell* claims, insisting he has no

evidence that his injuries were caused by a custom or policy of the City, the San Francisco Police Department, or Chief Lau ("municipal defendants"). To the contrary, the parties agree that Keita Moriwaki testified that departmental policy permits an officer to make a warrantless entry into a home with a supervisor's approval, notwithstanding the absence of exigent circumstances. JUF 31; Scott Dec., Exh. G (Moriwaki Dep. 37:4–38:10, 40:13–18). The testimony of a single officer is not dispositive; it does not conclusively demonstrate that defendants have a "permanent and well-settled" practice of performing unconstitutional arrests. *Thompson*, 885 F.2d at 1444. Nonetheless, Officer Moriwaki's testimony precludes resolution of this claim on summary judgment. Whether defendants in fact had such a policy is a question of fact for the jury.

A plaintiff may also prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (finding ratification if the "authorized policymakers approve a subordinate's decision and the basis for it"). Plaintiff insists the municipal defendants have so ratified Lieutenant Dutto's unconstitutional acts by failing to discipline Dutto for his entry into plaintiff's home. Notably, Dutto had previously been held liable for making a warrantless entry without exigent circumstances. *See King v. Massarweh*, 782 F.2d 825 (9th Cir.1986) (finding Dutto's forced entry into a home to arrest someone for criminal trespass unjustified because there were no exigent circum-

stances).[13] Apparently no disciplinary action was taken against Dutto for this particular incident, thus raising a question of ratification. The court finds there is a genuine issue of material fact. *See Henry v. County of Shasta*, 132 F.3d 512, 517–521 (9th Cir.1997) *amended by* 137 F.3d 1372 (1998) (municipality's failure to correct blatantly unconstitutional course of treatment even after being sued is persuasive evidence of a policy encouraging such official misconduct). Whether defendants ratified Dutto's conduct is a question for the jury. *See id.*

### IV. *Federal Rule of Civil Procedure 36(a)*

Federal Rule of Civil Procedure 36(a) permits requests for admission addressing mixed questions of law and fact. Fed. R.Civ.P. 36(a), Advisory Committee Notes on 1970 Amendment. Such matters are automatically admitted if not answered within 30 days of service. Fed.R.Civ.P. 36. Defendants served admissions on Sepatis on May 17, 2001. Plaintiff failed to respond until September 2001. By this failure, plaintiff effectively admitted the truth of the matters contained in the request for admissions. *Id.* ("Any matter admitted in response to a request for admission is conclusively established unless the court on motion permits withdrawal or amendment of the admission"); *accord Hadley v. United States*, 45 F.3d 1345 (9th Cir.1995); *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir.1985); *United States v. 2204 Barbara Lane*, 960 F.2d 126, 129–30 (11th Cir.1992); *Rainbolt v. Johnson*, 669 F.2d 767, 768 (D.C.Cir.1981) (default admissions given binding and conclusive effect). These admissions, however, do not alter the court's decision.[14]

---

**13.** Lieutenant Dutto would appear to be the Department's "forced entry" specialist.

**14.** The relevant admissions provide: "Admit that you have no evidence supporting your contention that San Francisco police officers unlawfully entered your home on April 22,

First, plaintiff merely admitted that he "had" no evidence of the challenged acts as of the date of the default admission. He has since conducted extensive discovery and gathered evidence of these violations.[15] Second, even absent plaintiff's evidence of these violations, defendants themselves have provided the necessary facts. Indeed, the court's decision relies almost entirely upon the facts as represented in the Joint Statement of Undisputed Facts submitted by both parties. Finally, plaintiff was represented by several different counsel during the relevant period. The court declines to bind plaintiff by an oversight of prior counsel.

*CONCLUSION*

For the foregoing reasons, the court hereby GRANTS plaintiff's Motion for Summary Judgment and DENIES defendants' cross-motion for the same. Counsel for plaintiff represented at the hearing on this motion that he is not pursuing claims against defendant John Newlin. To the extent Newlin was ever deemed a party to this action, he is hereby DISMISSED. Counsel further represented that plaintiff is not proceeding on his original state law claims. These claims are likewise DISMISSED.

IT IS SO ORDERED.

1999"; "Admit that you have no evidence supporting your contention that San Francisco police officers unlawfully searched your home on April 22, 1999"; "Admit that you have no evidence supporting your contention that San Francisco police officers unlawfully entered your home on May 24, 1999"; "Admit that you have no evidence supporting your contention that San Francisco police officers unlawfully searched your home on May 24, 1999." Gonzalez Dec., Exh. F (RFA Nos. 3, 4, 13 & 14).

15. Plaintiff took the depositions of several key witnesses months after his non-response. *See* Scott Dec., Exh. F (Dutto Dep., taken Nov. 28, 2001), Exh. H (Griffin Dep., taken Nov. 28, 2001), Exh. G (Moriwaki Dep. taken Feb. 14, 2002), Exh. I (Parry Dep., taken Feb. 14, 2002).